IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| JAMES LINNETT | § | |
| VS. | § | CIVIL ACTION NO. 1:04cv243 |
| DOUG DRETKE | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Petitioner James Linnett, an inmate confined in the Texas Department of Criminal Justice, Institutional Division, proceeding *pro se*, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

The above-styled action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Factual Background

Petitioner was previously convicted of several criminal offenses in Harris County, Texas. Petitioner is not challenging his criminal convictions. Instead, he challenges two prison disciplinary convictions.

In disciplinary case number 20030134737, petitioner was charged with being out of place and possessing contraband in the form of tobacco products. Following a disciplinary hearing held

1

on January 28, 2003, petitioner was convicted of the offenses charged. The following punishment was assessed: (1) 15 days of solitary confinement; (2) 30 days of recreation and commissary restriction; (3) demotion to a classification at which he earned fewer days of good conduct time credits and (4) forfeiture of 60 days of previously earned good conduct time credits. Petitioner's administrative appeals concerning the conviction were denied.

## Grounds for Review

Petitioner asserts the following grounds for review: (a) there was insufficient evidence to support the convictions; (b) the charges against him were false and (c) his requests that the evidence against him be brought to his disciplinary hearing were refused.

## Analysis

*Standard of Review*

Prison inmates such as petitioner who are eligible for release on mandatory supervision and who lose good conduct time credits as a result of prison disciplinary convictions are entitled to the procedural due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974). *See Murphy v. Collins*, 26 F.3d 541 (5th Cir. 1994). As petitioner was deprived of good conduct time credits as a result of the disciplinary conviction complained of and is eligible for release on mandatory supervision, he was entitled to: (1) written notice of the charges against him at least 24 hours before the hearing; (2) a

written statement of the fact-finder as to the evidence relied on and the reason for the disciplinary action and (3) the opportunity to call witnesses and present documentary evidence in his defense. *Wolff*, 418 U.S. at 563-66.

In addition, there must have been "some evidence" to support a prison disciplinary conviction. *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445 (1983). The result of a prison disciplinary proceeding will be overturned by a federal court "only where there is no evidence whatsoever to support the decision of the prison officials." *Reeves v. Pettcox*, 19 F.3d 1060, 1062 (5th Cir. 1994).

"Ascertaining whether this standard is satisfied does not require an examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. "Federal Courts will not review the sufficiency of the evidence at a disciplinary hearing; a finding of guilt requires only the support of 'some facts' or 'any evidence at all.'" *Gibbs v. King*, 779 F.2d 1040, 1044 (5th Cir.), *cert. denied*, 476 U.S. 1117 (1986) (citation omitted).

*Petitioner's Allegations*

Petitioner states that on January 17, 2003, a captain told petitioner and inmate Thomar Bond to go clean up the Syrup Mill. He states that on January 18, he and Mr. Bond went to the mill.

3

On January 19, he and Mr. Bond were picked up by Lieutenant Lester and taken to the Saddle House. When they arrived, another inmate told the lieutenant that the four wheel tractor petitioner and Mr. Bond had been using to clean the mill was needed. Mr. Bond then told petitioner to go to the line shack to get another tractor to use to clean the mill.

   Petitioner states he obtained the tractor and returned to the mill. He then drove the tractor to the unit's Hog Barn to pick up a box trailer to load things into. He states that when to arrived at the Hog Barn, Lieutenant Day and the warden or assistant warden asked who had told him to drive the tractor. Petitioner stated Mr. Bond had told him to drive the tractor. Lt. Day then told petitioner to take the tractor back to where he had found it. Petitioner then used the trailer to follow Lt. Day. He states the lieutenant stopped his vehicle and told petitioner to get off of the tractor after parking it on the side of the road.

   Petitioner states he was then driven to the mill where he told Mr. Bond what had happened. After petitioner and Mr. Bond worked cleaning the mill for 20-30 minutes, Lt. Day, Major Limpkin and the warden drove up and told them to come out of the mill and strip nude. Petitioner and Mr. Bond were then locked in a van and taken to the Hog Barn. When they arrived, Major Lumpkin told Lt. Day to take petitioner out of the van because he wanted to talk to him. After petitioner left the van, Lt. Day

and the warden drove the van with Mr. Bond in it to the back gate of the unit.

While they were gone, Major Lumpkin asked petitioner why he and Mr. Bond were digging holes in the floor of the mill. Petitioner told him that rather than digging holes, they were scooping up old corn and cotton seed.  Lt. Day and the warden then returned.  Petitioner was taken to the back gate. Petitioner and Mr. Bond were later taken to pre-hearing detention.  He was later charged with being out of place, based on being found at the Hog Barn, and possessing tobacco.

Petitioner states the charges against him were false. Petitioner states Mr. Bond admitted the tobacco was his. Petitioner states he was convicted of both offenses despite no evidence being presented to support the charges.  He states he asked that the evidence against him be brought to the hearing, but his request was refused.

*Insufficient Evidence and False Charges*

Petitioner asserts there was insufficient evidence to support the convictions and that the charges against him were false.  However, a review of the audiotape of the disciplinary hearing reveals sufficient evidence was introduced to support the convictions.

At the hearing, petitioner admitted he had left his work assignment at the Syrup Barn to go get a tractor.  He stated he took such action at the instruction of a fellow inmate.  Captain Dildane testified inmates are not authorized to give one another

instructions to leave a work assignment. While petitioner may have not been aware of the proper procedure to follow in such a situation, the testimony established, and petitioner does not contest, that he was not where he was assigned to be. There was sufficient evidence to support this conviction.

In addition, petitioner admitted at the hearing that he attempted to hide a lighter and four cigarettes. He states the items belonged to Mr. Bond and that he was merely attempting to assist him. Mr. Bond agreed with these assertions. However, petitioner's testimony demonstrated that he possessed tobacco, even if only while he was trying to hide it. Accordingly, there was evidence to support this conviction.

*Failure to Bring Evidence*

Petitioner also states the hearing officer refused his request that the evidence against him be brought to the hearing. Petitioner does not describe what evidence he wanted brought to the hearing. The only physical evidence which would appear to have been involved in his case was the tobacco.

The tape of the hearing does not reflect a request by petitioner that evidence be brought to the hearing. Further, even if petitioner made such a request, he has not explained how bringing the tobacco into the hearing would have assisted him in contesting the charges against him. As the record does not reflect petitioner made a request for evidence, and as petitioner has failed to demonstrate he suffered prejudice because the

evidence was not brought to the hearing, this ground for review is without merit.

## Recommendation

This petition for writ of habeas corpus should be denied.

## Objections

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636 (b)(1)(C).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error.  *Douglass v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996) *(en banc);* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

**SIGNED this the 23rd day of May, 2005.**

KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE